Case 4:15-cv-02739 Document 17 Filed in TXSD on 10/19/16 Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
October 19, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERNESTO ABILA, § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-15-2739 |
| § | |
| AMEC FOSTER WHEELER USA § | |
| CORPORATION, § | |
| Defendant. § | |

# **MEMORANDUM AND ORDER**

This employment case is before the Court on the Motion for Summary Judgment [Doc. # 12] filed by Defendant Amec Foster Wheeler USA ("Amec"), to which Plaintiff Ernesto Abila filed a Response [Doc. # 13], and Amec filed a Reply [Doc. # 16]. The Court has carefully reviewed the record in this case. Based on that review and the application of relevant legal authorities, the Court concludes that Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of his discriminatory pay and discriminatory discharge claims, but has presented sufficient evidence to avoid summary judgment on his retaliatory discharge claim. Because Plaintiff obtained alternate employment earning more in 2015 than he would have earned at Amec, his claim for lost wages and front pay ends on December 31, 2014. As a result, the Court **grants** Defendant's Motion for Summary Judgment on the discriminatory pay and discriminatory discharge claims, and **denies**

the Motion for Summary Judgment on the retaliatory discharge claim. Plaintiff is not entitled to lost wages or front pay from January 1, 2015 onward.

## I.     BACKGROUND

Plaintiff is Hispanic of Mexican origin, and he was born in 1955. He was hired by Amec in November 2009 as a Piping Design Supervisor (Designer 7). In January 2014, he was promoted to Designer 9 and given an 11% raise. Other non-Hispanic Designer 9 employees were paid more than Plaintiff. Plaintiff alleges that he was paid less because he is Hispanic.

On August 1, 2014, Plaintiff's employment with Amec was terminated by his supervisor, John Pfeifer, for having allowed non-employees to access the company computer system. Plaintiff admits that he brought his son and his son's friend to his office and allowed them to access and input data on the Amec computer system. Plaintiff asserts, however, that his discharge was based on race and age discrimination, and that it was in retaliation for having engaged in protected activity under Title VII.

At the time of his discharge, Plaintiff's base salary was $192,924.00. On August 18, 2014, less than three weeks after his discharge, Plaintiff began working for Burns & McDonnell. Although Plaintiff's initial base salary at Burns & McDonnell was less than at Amec, he is an employee owner who receives bonuses based on company performance. As a result, Plaintiff in 2015 earned $229,931.00,

more than the highest paid Designer 9 at Amec. Plaintiff also receives employee benefits at Burns & McDonnell that are similar to those he received at Amec.

On January 26, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") through the Texas Workforce Commission. Plaintiff alleged that his pay was lower than non-Hispanic employees and that his discharge was based on his race, national origin, and age, and that it was in retaliation for having engaged in protected activity under Title VII.

Plaintiff filed his Original Petition in Texas state court on August 10, 2015. Amec filed a timely Notice of Removal, and Plaintiff filed a First Amended Complaint [Doc. # 8]. After the close of discovery, Amec filed its Motion for Summary Judgment. The motion has been fully briefed and is now ripe for decision.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir.

2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not

assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

## III. DISCRIMINATORY PAY CLAIM

Plaintiff alleges that he was paid less than non-Hispanic Designer 9s. To establish a *prima facie* case of discriminatory compensation, he must show that (1) he is a member of a protected class, and (2) "he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). "An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are nearly identical to those of a better-paid employee who is not a member of the protected class." *Id.*

at 523 (internal quotation and citation omitted); *see also Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 831-31 (5th Cir. 2015).

In this case, Plaintiff's base pay at Amec was $192,924.00. Plaintiff identifies four non-Hispanic Designer 9 employees who were paid more than he. Plaintiff alleges that James Polansky was paid $203,170.00, Jeffrey Stevenson was paid $201,189.00, John R. Mahaffey was paid $195,524.00, and James Gibson was paid $195,004,00. Plaintiff has failed to present evidence, however, that his circumstances were nearly identical to those of any one of the better-paid non-Hispanic Designer 9 employees. Mahaffey, Gibson and Stevenson had been employed with Amec as Designer 9 employees much longer than Plaintiff. Abila was promoted to the Designer 9 level from the Designer 7 level, while Polansky was at a higher level with higher pay at the time he was promoted to Designer 9. Indeed, Polansky was given only an 8% pay raise when he was promoted to Designer 9, while Plaintiff was given an 11% raise.

Plaintiff has not presented evidence that raises a genuine issue of material fact regarding whether the disparity between his pay and that of the four identified non-Hispanic Designer 9 employees was the result of race or national origin discrimination. As a result, Amec is entitled to summary judgment on this claim.

## IV.     **DISCRIMINATORY DISCHARGE CLAIM**

Plaintiff alleges that his discharge was the result of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and race and national origin discrimination in violation of Title VII. Plaintiff can establish his discriminatory discharge claim through direct or circumstantial evidence. *See Heggemeier v. Caldwell County*, 826 F.3d 861, 867 (5th Cir. 2016) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). Because Plaintiff in this case relies on circumstantial evidence, his claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this framework, Plaintiff must first establish a *prima facie* case of discrimination and, if he does so, there arises a presumption of discrimination and the employer must articulate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment. *Id*. If the employer meets this burden of production, Plaintiff must present evidence that Defendant's articulated reason is a pretext for discrimination. *Id*.

***Prima Facie Case*.–** To establish a *prima facie* case of race and national origin discrimination in connection with the termination of employment for alleged misconduct, Plaintiff must present evidence that:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). It is undisputed that Plaintiff is a member of a protected class, that he was qualified for the Designer 9 position he held at Amec, and that his termination was an adverse employment action.

Plaintiff has failed to present evidence, however, that his race or national origin caused him to be treated less favorably than other similarly situated employees under nearly identical circumstances. To demonstrate the fourth element of the *prima facie* case, Plaintiff must identify a similarly-situated employee who is not a member of his protected class. *Id.* Additionally, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Heggemeier*, 2016 WL 3457260 at *3 (quoting *Lee*, 574 F.3d at 260).

Plaintiff alleges that an unnamed female, Hispanic employee also brought a family member to work and permitted the family member to access the company

computer system. Plaintiff has not asserted a sex discrimination claim, and it is undisputed that the identified comparator is also Hispanic. Moreover, Plaintiff admits that he did not report the female employee's alleged infraction and has presented no evidence that anyone else at Amec was aware of it.

In his First Amended Complaint, Plaintiff alleges that Amec employee James Gibson took "disability leave, despite not actually suffering from a disability." *See* First Amended Complaint, ¶ 12. Plaintiff does not present Gibson as a comparator in his Response. Moreover, Gibson's alleged misconduct is not "nearly identical" to Plaintiff's.

Plaintiff has failed to present evidence of a similarly-situated non-Hispanic employee at Amec who was treated more favorably than he under nearly identical circumstances. As a result, he has not established a *prima facie* case of race or national origin discrimination in connection with the termination of his employment, and Defendant's Motion for Summary Judgment on this claim is granted.

To establish a *prima facie* case of age discrimination under the ADEA in connection with the termination of his employment, a plaintiff must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged

because of his age." *Goudeau v. Nat'l Oilwell Varco LP*, 793 F.3d 470, 474 (5th Cir. 2015) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)). In this case, Plaintiff has presented evidence that he was discharged, that he was qualified for his position, that he was within the protected class under the ADEA at the time of his discharge, and that he was replaced by a younger employee. This evidence satisfies the requirements for a *prima facie* case of age discrimination.

***Pretext*.**– Amec has articulated a legitimate non-discriminatory reason for its decision to discharge Plaintiff – his admitted violation of company policy. Therefore, to avoid summary judgment in favor of Defendant on his age discrimination claim, Plaintiff must present evidence from which a reasonable factfinder could conclude that Amec's explanation was a pretext for discrimination.

It is undisputed that Plaintiff brought non-employees into his office and allowed them to access and input data onto Amec's computer system. It is undisputed that this constitutes a violation of Amec company policy. Plaintiff's subjective speculation that he was fired because of his age is not evidence that the true reason for Amec's employment decision was discrimination and that "but for" his age he would not have been discharged. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010); *Strahan v. Waste Mgmt.*, 539 F. App'x 331, 332 (5th Cir. Aug. 19, 2013) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004)). As

a result, Defendant's Motion for Summary Judgment on the age discrimination claim is granted.

## IV. <u>RETALIATORY DISCHARGE CLAIM</u>

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) he participated in a protected activity, (2) he suffered an adverse employment action, and (3) there exists a causal connection between the protected activity and the adverse action. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009); *Wu v. Miss. State Univ.*, 626 F. App'x 535, 537 (5th Cir. Sept. 29, 2015). The third element requires "but-for causation," meaning proof that the adverse action would not have occurred without the employee's protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2533 (2013); *Wu*, 626 F. App'x at 537. If Plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996)).

Plaintiff has presented evidence that he engaged in activity protected under Title VII. Specifically, Plaintiff has presented evidence that he complained anonymously to Amec's Human Resources Department and Chief Executive Officer that Amec was discriminating against Hispanic applicants of Mexican origin.

Separately, approximately one week before he was discharged, Plaintiff complained in person to John Coffin, Amec's Vice President, that Amec's hiring practices were discriminatory and disfavored Hispanics of Mexican origin. There is no dispute that the termination of Plaintiff's employment with Amec was an adverse action.

On the causal connection element, Plaintiff has presented evidence of close temporal proximity – one week – between his protected activity and his discharge. Additionally, Plaintiff has presented evidence that his supervisor, Pfeifer, submitted an Employee Termination Form stating that Plaintiff "continually entagled [*sic*] himself in HR issues with job applicants . . .." *See* Employee Termination Form, Exh. 1 to Response. Defendant argues that Plaintiff failed to present evidence that Pfeifer knew about Plaintiff's complaints regarding discrimination against Hispanic applicants. Pfeifer is identified, however, as the person who submitted the Employee Termination Form identifying Plaintiff's entanglement with HR on job applicant issues as a reason for the termination of his employment. *See id.* Plaintiff testified in his deposition that when he complained to Coffin, he was told that Coffin would discuss the matter with Pfeifer. *See* Abila Depo., p. 115.

Plaintiff's evidence raises a genuine issue of material fact regarding whether the termination of his employment was in retaliation for having engaged in protected activity under Title VII. Because his entanglement in the HR issue regarding Hispanic

applicants for employment with Amec was listed as a basis for his discharge, Plaintiff's evidence raises a genuine issue of material fact regarding whether Amec's explanation that Plaintiff was discharged because of his son's use of the Amec computer was a pretext for retaliation. Defendant's Motion for Summary Judgment on Plaintiff's retaliatory discharge claim is denied.

## V.     **CLAIM FOR LOST WAGES AND FRONT PAY**

It is undisputed that, at the time of his discharge, Plaintiff's base salary was $192,924.00. It is also undisputed that in 2015, Plaintiff earned $229,931.00 at Burns & McDonnell, more than the highest paid Designer 9 at Amec. There is no dispute that Plaintiff receives employee benefits at Burns & McDonnell that are similar to those he received at Amec.

Damages in a discharge case are "'settled and complete' and the back pay period ends, when the plaintiff begins earning more at his new job than he did at the job from which he was discharged." *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023, 1029 (5th Cir. 1992) (citing *Kolb v. Goldring*, 694 F.2d 869, 874 (1st Cir. 1982); *Matthews v. A–1*, 748 F.2d 975, 978 (5th Cir. 1984)). Because Plaintiff earned more in calendar year 2015 than he was earning (or would have earned) at Amec, Defendant argues that Plaintiff is not entitled to receive back pay or front pay after December 31, 2014. Plaintiff presented no argument to the contrary

in his Response. Pursuant to Fifth Circuit authority, Plaintiff's lost pay damages were "settled and complete" and he was not entitled to additional back pay or front pay on or after January 1, 2015.

## VI. CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of his race or national origin discrimination claim in connection with his compensation as a Designer 9. Additionally, Plaintiff has failed to present evidence that raises a genuine issue of material fact in connection with his discriminatory discharge claim under the ADEA and Title VII. Plaintiff's evidence, however, raises a genuine issue of material fact regarding his claim of retaliatory discharge. Plaintiff's damages for lost wages terminated when he began to earn more at his new job that he was earning at Amec. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 12] is **GRANTED** as to the discriminatory pay and discriminatory discharge claims, and is **DENIED** as to the retaliatory discharge claim. The case remains scheduled for docket call on November 30, 2016, unless settled prior to that date.

SIGNED at Houston, Texas, this **19th** day of **October, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2015\2739MSJ.wpd   161019.1245